IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**VALMARC CORPORATION**, *a Massachusetts Corporation*,

    Plaintiff,

v.

**NIKE, INC.**, *an Oregon Corporation*,

    Defendant.

No. 3:21-cv-01556-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

This case is before the Court on Defendant Nike Inc.'s Motion to Dismiss [ECF 36]. Because Plaintiff adequately alleges the elements of trade secret misappropriation under both Oregon and Federal trade secret law providing fair notice to Defendant, the Court is compelled to deny the motion.

### BACKGROUND

Plaintiff VALMARC Corporation, doing business as Vi3, brings the instant action against Nike, Inc. ("Nike") alleging trade secret misappropriation arising out of Nike's alleged theft of Vi3's "proprietary anticounterfeiting and brand protection system." Compl. [ECF 63] ¶ 1. The complaint contains two causes of action: misappropriation of trade secrets under the

1 – OPINION AND ORDER

federal Defend Trade Secrets Act 18 U.S.C. §§ 1836 *et seq* ("DTSA") and the Oregon Trade Secrets Act Or. Rev. Stat. §§ 646.461 *et seq* ("OTSA"). *Id.* ¶¶ 124–56.

Vi3's system helps prevent counterfeiting by using barcodes to track inventory. *Id.* ¶ 4. Vi3 alleges that its system "encompasses many valuable trade secrets" and that, in particular, eight different components of its system—either alone or in combination—are protectable trade secrets. *Id.* ¶ 7, 29, 30–37. The eight components are as follows: (1) the overall architecture of the system, (2) the physical and digital processes for creating links between different unique identifiers, (3) Vi3's business and technical processes for generating unique identifiers and transmitting them, (4) Vi3's methods for generating unique identifie■■■ ■■■■■■■■ (5) Vi3's methods for ■■■■■■■ ■■■■■■■■ ■■ (6) ■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■ (7) Vi3's technology and systems for reporting information about suspected counterfeits, and (8) the wealth of knowledge accumulated by Vi3's personnel about implementing an anticounterfeiting system. *Id.* ¶¶ 30–37.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

In 2014 Nike began meeting with Vi3. *Id.* ¶ 60. Over the course of 2015 Vi3 alleges that it provided Nike with "a wealth of confidential information related to technical aspects of its system, as well as confidential information related to Vi3's approach to implementing its systems across Nike's many physical locations." *Id.* ¶¶ 65–70. The parties participated in biweekly calls, frequently exchanged electronic communications, and visited Vi3's facilities in New Hampshire. *Id.* ¶¶ 68–69. While the complaint does not reflect that Vi3 ever entered into an NDA with Nike

it instead alleges that both parties "understood the confidential nature of their information exchanges, and that each party would maintain the confidentiality of the other's information." *Id.* ¶ 73. However, Vi3 states that Nike was aware of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 79. And while discussions continued between Nike and Vi3 over 2016 and 2017 they never entered into an agreement for Nike to use Vi3's technology. *Id.* ¶¶ 81–101.

In November 2018, Vi3 hired former Nike Employee Paul Foley. Compl. [ECF 63] ¶ 11. He stated that the reason Nike never entered into an agreement with Vi3 was because Nike misappropriated Vi3's trade secrets to create its own system to fight counterfeiting. *Id.* ¶¶ 11, 104–108. Vi3 alleges that in 2019 evidence of Nike's misappropriation surfaced online and that publicly available information further corroborates that Nike misappropriated Vi3's system. *Id.* ¶ 109–123.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

**DISCUSSION**

For a plaintiff to state a claim for misappropriation of a trade secret under the DTSA a Plaintiff must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); 18 U.S.C § 1839(5).

To state a claim for misappropriation of trade secret under OTSA, a plaintiff must allege: "(1) the subject of the claim qualifies as a statutory trade secret; (2) plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-cv-01142-HZ, 2018 WL 4354301, at *14 (D. Or. Sept. 12, 2018) (citing *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1218 (D. Or. 2004)).

The Ninth Circuit and district courts in the Ninth Circuit have considered DTSA and state law trade secret misappropriation claims together when the elements and definitions in the two statutory schemes overlap. *See InteliClear*, 978 F.3d at 657 (considering California Uniform Trade Secrets Act and DTSA claims together); *See DropzoneMS, LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 WL 7630788, at *9 (D. Or. Sept. 12, 2019) ("Both the DTSA and the [OTSA] define the terms 'improper means,' 'misappropriation,' and 'trade-secret,' and while they define the terms differently, the differences do not appear to be substantive.") Here, the parties both agree on the elements of the OTSA and DTSA claims, and both discuss the DTSA and OTSA claims together in their briefing. Def.'s Mot. to Dismiss [ECF 36] at 9–10. Pl.'s Resp. in Opp'n [ECF 46] at 11–12. Accordingly, the Court will do the same.

### 1. Whether the Claim Qualifies as a Statutory Trade Secret

Nike identifies three reasons why Vi3 has failed to properly identify its trade secret. Def.s' Mot. to Dismiss [ECF 36] at 10–20. First, that Nike cannot misappropriate external-facing aspects of Vi3's service because these aspects are non-secret and obvious. *Id*. at 11–14. Second, that vague contentions that Vi3's "system" is a trade secret are inadequate. *Id*. at 14–15. And third, that the eight categories identified by Vi3 are insufficient to identify specific trade secrets. *Id*. at 15–20.

Vi3 counters that its complaint adequately puts Nike on notice of the statutory trade secrets at issue because the complaint both sufficiently describes the trade secrets and provides copious additional detail about when the trade secrets were communicated to Nike. Pl.'s Resp. in Opp'n [ECF 46] at 16.

Under OTSA, a "trade secret" is defined as "information … that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Or. Rev. Stat. § 646.461(4). Under the DTSA, a "trade secret" is similarly defined as information that "the owner thereof has taken reasonable measures to keep secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or information." 18 U.S.C § 1839(3).

"[A] trade secret is one of the most elusive and difficult concepts in the law to define. In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances." *Kaib's Roving R.PH. Agency, Inc. v. Smith*, 237 Or. App. 96,

5 – OPINION AND ORDER

105 (2010) (internal citation omitted). A trade secret has been pled with the requisite specificity needed when it allows the defendant to "determine whether the information in question was in fact secret and whether it was in fact readily ascertainable through appropriate means." *Garfias v. Portland Spray Works Inc.*, No. 3:20-cv-00873-IM, 2021 WL 27456, at *5 (D. Or. Jan. 3, 2021). It is enough for a plaintiff to "limit[] the categories of the information allegedly misappropriated by [a defendant] to particular subjects." *Sennco Sols. Inc., v. Mobile Techs., Inc.*, No. 3:20-cv-1426-JR, 2021 WL 463436, at *2 (D. Or. Feb. 9, 2021) (citing *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049 (N.D. Cal. 2020)). Further, if a plaintiff identifies greater detail about when, how, and to whom a trade secret was shared, those types of allegations "both remove the alleged trade secrets from the realm of 'general knowledge in the trade' and 'permit [defendant] to ascertain at least the boundaries within which the secret lies." *Sennco Sols. Inc.*, 2021 WL 27456, at *3 (internal citation omitted).

    The Court finds Vi3 has sufficiently pled the first element of its OTSA and DTSA claim. If Vi3 claimed only the public facing QR codes were trade secrets, then Nike would be correct that those pieces of the system would not fit the OTSA or DTSA definition of trade secret. However, Vi3 provides ample detail of its alleged trade secrets throughout the complaint and in particular in the eight categories identified. Compl. [ECF 63] ¶¶ 30–37. Here, Vi3 has gone beyond merely limiting the categories of information allegedly misappropriated to particular subjects and instead describes specific component parts of its technology. *See Sennco Sols. Inc.*, 2021 WL 43436, at *2.

    Further, because Vi3 provides great detail in the complaint about when the alleged trade secrets were disclosed to Nike, *see* Compl. [ECF 63] ¶¶ 65–72, this additional context certainly allows Nike to ascertain the boundaries in which the secret lies. *Sennco Sols. Inc.*, 2021 WL

6 – OPINION AND ORDER

43436, at *3. Therefore, Vi3's description of trade secret information in the complaint is sufficient at this stage of litigation to qualify as a trade secret under OTSA and the DTSA.

### 2. Whether Plaintiff Employed Reasonable Measures to Maintain the Secrecy of its Trade Secrets

Next, Defendant argues that Plaintiff failed to employ reasonable measures to maintain the secrecy of its trade secrets. Nike argues that because ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, Vi3 never communicated to Nike that the information shared was confidential, and that sharing openly with Nike with no NDA in place does not constitute reasonable measures to maintain secrecy. Def.s' Mot. to Dismiss [ECF 36] at 20–27. Vi3 contends first that Nike is attempting to litigate a fact dispute on a motion to dismiss. Pl.'s Resp. in Opp'n [ECF 46] at 23. Nike fails to respond to this argument in its reply. Vi3 goes on to state that it took reasonable measures to maintain its trade secret by keeping the information on password protected computer systems and that Nike was aware of ▆▆▆▆▆▆▆▆▆▆ therefore putting Nike on notice of the information's confidentiality. Compl. [ECF 63] ¶¶ 39, 130, 147.

Under both OTSA and the DTSA the owner of the trade secret must take reasonable measures to keep such information secret. 18 U.S.C § 1839(3); Or. Rev. Stat. § 646.461(4). Trade secret law is in fact a "two-way street" and requires notice that the information at issue is a secret. *Carr v. AutoNation, Inc.*, 798 F. App'x 129, 130 (9th Cir. 2020). An implied duty of confidentiality exists when the other party has reason to know the information was confidential. *Id.*

In the instant case, Vi3 alleges that Nike was aware of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Compl. [ECF 63] ¶¶ 130, 147. In its response to Nike's motion Vi3 argues that this notice undercuts Nike's claim that it had "no reason to believe the parties' relationship was 'confidential.'" Def.'s Mot. to Dismiss [ECF 36] at 26. The Court

7 – OPINION AND ORDER

agrees that knowledge of ▉▉▉▉▉▉▉▉▉ put Nike on notice of the confidentiality of the information discussed between Nike and Vi3. *Carr*, 798 F. App'x at 130. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Compl. [ECF 63] ¶¶ 50, 60. In making this finding, the Court does not rest on a finding that Nike ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Vi3 pleads other measures geared toward maintaining secrecy specifically that its trade secret information was on a "password-protected, multifactor-authenticated computer system." *Id*. ¶ 39. Further, the lack of an NDA does not preclude Vi3 from alleging it took other reasonable measures to maintain confidentiality or that Nike had notice of the information's confidentiality as previously discussed.

Therefore, read in context and drawing all inferences in Vi3's favor, Vi3's description of the reasonable measures it took to maintain confidentiality is sufficient at this stage of litigation under the OTSA and DTSA. What is immaterial to the Court's decision at this time are Vi3's pleadings around what steps Nike took to protect its information. *See e.g.,* Compl. [ECF 63] ¶¶ 74–76, 83. Further discussion of the sufficiency of the degree of secrecy is ultimately a question of fact not to be decided on a motion to dismiss. *See InteliClear*, 978 F.3d at 660–661.

3. **Whether Defendant's Conduct Constitutes Misappropriation**

Finally, Defendant argues that Plaintiff failed to allege any specific facts of misappropriation by Nike. Def.s' Mot. to Dismiss [ECF 36] at 27–32. Plaintiff counters that its pleadings—that combine details around the similarity of the two systems as well as information about how Nike obtained the trade secret—adequately pled misappropriation. Pl.'s Resp. in Opp'n [ECF 46] at 28–31.

Under the DTSA "misappropriation" means the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C § 1839(5). The OTSA defines "misappropriation" as "[d]isclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was … [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]" Or. Rev. Stat. § 646.461(2)(d)(B).

The Court finds that allegations that Nike uses QR codes on its products is sufficient to support the inference that Nike is misappropriating the non-public facing trade secrets alleged above when combined with the additional facts pled. Compl. [ECF 63] ¶¶ 109–123. The additional facts are the portions of the complaint pled on information and belief that misappropriation is occurring and the portion of the complaint that states that Mr. Foley knew Nike misappropriated Vi3's trade secrets. *Id*. ¶¶ 103–106, 121, 123. Therefore, read in context and drawing all inferences in Vi3's favor, the Court finds that Vi3 has adequately pled misappropriation.

## CONCLUSION

Because Plaintiff adequately alleges the elements of trade secret misappropriation under both Oregon and Federal trade secret law providing fair notice to Defendant, the Court DENIES Defendant's Motion to Dismiss [ECF 36].

IT IS SO ORDERED.

DATED this 13th day of June, 2022.

        /s/ Karin J. Immergut
        Karin J. Immergut
        United States District Judge