IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VALMARC CORPORATION**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**NIKE, INC.,** and **CONVERSE, INC.**,<br><br>　　　　　Defendants. | Case No. 3:21-cv-1556-IM<br><br>**ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL** |

**IMMERGUT, District Judge.**

　　Before this Court is Defendants Nike, Inc. and Converse, Inc.'s Motion to Compel Plaintiff Valmarc Corporation to Produce Responsive, Non-Privileged Documents ("MTC"), ECF 148. Defendants request that this Court compel Plaintiff to produce seven separate tranches of documents—what Defendants refer to as Exhibits F, J, K, L, H, and M and communications between Plaintiff and the third-party private equity group Striker Partners. In Defendants' telling, these documents are not protected by the attorney-client privilege.

PAGE 1 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

For the reasons below, this Court DENIES the Motion to Compel with regard to Exhibits F, J, K, and L, RESERVES ruling with regard to Exhibits H and M pending in camera review, and DENIES the Motion with regard to communications between Plaintiff and Striker, with leave for Defendants to renew their request after narrowing their request to specific categories of documents and conferring with Plaintiff.

The sections below (A) address the applicability of the attorney-client privilege to the specific exhibits Defendants identify in their Motion; and (B) address arguments concerning communications between Plaintiff and Striker.

## A. Attorney-Client Privilege

### 1. Exhibit F

Exhibit F is a series of emails between non-lawyers employed by Plaintiff, but their emails include a forwarded chain of emails between Plaintiff's patent infringement attorney and an executive. *See* ECF 149-6, Ex. F. As currently produced, the emails include redactions to both the non-lawyers' emails between each other and to the forwarded email chain between the executive and the attorney. *See id.* Plaintiff logged these emails as privileged because the forwarded emails "reflect[] legal advice from attorney K. Kim regarding patent infringement analysis." ECF 149-5, Ex. E at 21, 24–26. Plaintiff has agreed to re-produce the emails "with the redactions to emails between non-lawyer personnel removed" but with redactions retained "on the underlying privileged emails." Plaintiff's Response ("Resp."), ECF 160 at 4.

In light of Plaintiff's concession, the Motion is DENIED on this point. The outside counsel's emails remain privileged even though they were forwarded between non-lawyers. The attorney-client privilege applies to "'a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel,' as well as 'an employee

PAGE 2 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART
DEFENDANTS' MOTION TO COMPEL

communication regarding her intent to seek legal advice about a particular issue.'" *United States ex rel. Schmuckley v. Rite Aid Corp.*, Case No. 2:12-cv-01699-KJM-JDP, 2023 U.S. Dist. LEXIS 13561, at *5 (E.D. Cal. Jan. 25, 2023) (citation and alteration omitted). Defendants themselves accept that "certain advice regarding the merits of [legal] claims might be privileged if requested or received from an attorney." MTC, ECF 148 at 5. And they do not otherwise challenge the sufficiency of Plaintiff's privilege log.[1] Accordingly, Plaintiff's agreement to remove redactions to the communications between non-lawyers and retain redactions to the outside counsel's emails moots Defendants' motion to compel on this point.

2. **Exhibit J**

Exhibit J is a series of redacted emails between Plaintiff's employees. *See* ECF 149-10, Ex. J. Plaintiff logged these emails as privileged because they "reflect[] legal advice of Wilmer Hale and K. Kim re potential intellectual property issues." ECF 149-5, Ex. E at 7, 13, 23. Defendants argue, however, that this cannot be the case because "neither the law firm Wilmer Hale nor Mr. Kim are senders or recipients of" the emails. MTC, ECF 148 at 6–7.

The Motion is DENIED on this point. Defendants cite no case law for their "senders or recipients" argument, and Defendants do not otherwise challenge the sufficiency of the privilege log entries, which show the recipients of the emails, when these emails were sent, and a specific basis for the attorney-client privilege. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070–

---

[1] Defendants observe that Plaintiff amended its privilege log entries; the entries first stated that the underlying emails from Attorney Kim were "regarding Nike litigation" and were amended to be "regarding patent infringement analysis." MTC, ECF 148 at 4 & n.3. But Defendants do not explain why the attorney-client privilege should not extend to the underlying emails, notwithstanding the amendments. Their arguments only address communications between non-lawyers.

PAGE 3 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

71 (9th Cir. 1992) (explaining that when a privilege log entry contains such information, it is sufficient to "establish the attorney-client privilege").

### 3. Exhibit K

Exhibit K is a series of redacted emails between several of Plaintiff's executives. ECF 149-11, Ex. K. Plaintiff logged these emails as privileged because they contain "[e]mail communication reflecting legal advice from William Moorman and John Ottaviani regarding Nike NDA." ECF 149-5, Ex. E at 145. Defendants argue, however, that these emails cannot be privileged because "none of these lawyers sent or received these communications." MTC, ECF 148 at 7.

The Motion is DENIED on this point. Again, Defendants cite no case law for their "senders or recipients" argument, and Defendants do not otherwise challenge the sufficiency of the privilege log entries, which show the recipients of the emails, when these emails were sent, and a specific basis for the attorney-client privilege.

### 4. Exhibit L

Exhibit L is an email chain between two of Plaintiff's executives. *See* ECF 149-12, Ex. L. Plaintiff logged the redacted portion of this email as an "[e]mail [c]ommunication reflecting legal question for Valmarc's IP attorney regarding cease-and-desist." ECF 149-5, Ex. E at 159. Defendants contend, however, that "the unredacted portions of the email suggest that the redacted portion of the email is not seeking or receiving legal advice." MTC, ECF 148 at 7.

This contention lacks merit, and the Motion is DENIED on this point. The title of the email is "Nike" and the only unredacted portion states: "John, thank you – we will have to discuss in detail." ECF 149-12, Ex. L. There is no indication that the redacted portion of the

email does not concern legal advice, and Defendants do not otherwise challenge the sufficiency of Plaintiff's privilege log entry.

5. **Exhibit H**

Exhibit H consists of redacted minutes from a Valmarc Board of Directors meeting held in August 2018. ECF 149-8, Ex. H. The redacted portions are two paragraphs that seem to explain why Attorney William R. Moorman joined the meeting. *Id.* at 4–5, 39–40. Defendants allege that this board meeting is the last board meeting before Plaintiff's statute of limitations cut-off date and that the redacted portion could prove vital to Defendants' statute of limitations defense. MTC, ECF 148 at 5–6. Plaintiff's privilege log entry for these minutes is opaque and conclusory: it states that the redacted portion "reflect[s] legal advice regarding the subject matter conveyed in the unredacted portion of the document." ECF 149-5, Ex. E at 57, 112.

With regard to these minutes, this Court RESERVES ruling on the Motion pending in camera review. A party opposing a claim of attorney-client privilege "need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d at 1075. Such a basis has been asserted here because it is unclear if the redacted portion includes legal advice or merely the discussion of legal topics. Legal advice presented during a board meeting can be privileged. *See Schmuckley*, 2023 U.S. Dist. LEXIS 13561, at *8. But discussion among executives about legal topics is not privileged. *See Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, Case No. SA CV 19-00835-JVS (DFMx), 2020 WL 6540510, at *3 (C.D. Cal. Sept. 28, 2020) (finding that emails among non-lawyer executives concerning "legal issues" were not privileged). Given the insufficiency of Plaintiff's privilege log entry, the

PAGE 5 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

applicability of the attorney-client privilege to Exhibit H must be resolved through in camera review.

### 6. Exhibit M

Exhibit M is a seventeen-page document shared by Valmarc's former CEO, Pat Costa, with another Valmarc executive. *See* ECF 149-13, Ex. M. The only redacted portion is the cover page. *Id.* at 1. Plaintiff wrote in its privilege log that the redacted portion "reflect[s] legal advice regarding the subject matter conveyed in the unredacted portion of the document," ECF 149-5, Ex. E at 113, but it is unclear what this boilerplate language precisely means. Plaintiff alleges for the first time in its Response Brief that the redacted cover letter is "directed to one of Vi3's attorneys, Morris Pollack, and explain[s] which portions of the document Mr. Costa revised and why." Resp., ECF 160 at 8. But there is nothing in the document suggesting that the redacted portion was directed to an attorney, or otherwise verifying Plaintiff's new allegations.

Because of the deficient privilege log entry and the lack of any evidence in the seventeen-page document regarding the privileged nature of the cover letter, this Court RESERVES ruling on the Motion as to Exhibit M and will review an unredacted copy of Exhibit M in camera.

## B. Communications Between Plaintiff and Striker Partners

The following section addresses Defendants' request for this Court to compel Plaintiff to produce communications between Plaintiff and its third-party private equity firm investor, Striker Partners. Because neither party has provided this Court with the specific language of Defendants' discovery requests, this Court construes Defendants' request as seeking *all* communications between Plaintiff and Striker including those that contain privileged information. Defendants argue that any privilege that once attached to this information has been

PAGE 6 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART
DEFENDANTS' MOTION TO COMPEL

categorically waived. Defendants also argue that the same is true for information contained in communications between Plaintiff and Striker's employees, Sean Hainer and Derek Spence.

This Court rejects Defendants' arguments that the attorney-client privilege has been categorically waived in these communications. Further, with regard to documents that do not fall under the attorney-client privilege at all, this Court rejects Defendants' request at this time as overbroad and vague. As described in more detail below, however, Defendants will have leave to renew this Motion to Compel after identifying specific categories of documents. Therefore, this Court DENIES the Motion to Compel on the issue of Valmarc-Striker communications with leave for Defendants to renew.

1. **The Common Interest Doctrine**

Defendants' broadest request is that this Court order Plaintiff to produce "hundreds of communications" between Plaintiff and its third-party private equity firm investor, Striker Partners, even those that contain privileged information. MTC, ECF 148 at 8. According to Defendants, "Plaintiff waived any privilege" over that information "by disclosing [the information] to Striker." *Id.* For its part, Plaintiff invokes the common interest doctrine, arguing that the disclosure of privileged information to Striker could not have led to waiver of the privilege given "Striker's close financial, operational, investment, and legal involvement" with Plaintiff. Resp., ECF 160 at 11.

This Court rejects Defendants' contention that the common interest doctrine has no applicability here. The common interest doctrine operates as an exception to the waiver of privilege; it permits separate parties to share privileged communications with each other without waiving privilege when "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and

(3) the privilege has not [otherwise] been waived." *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, Case No.: 2:14–cv–01232–APG–GWF, 2017 WL 2292818, at *2 (D. Nev. May 25, 2017) (citation omitted). Though "[t]he common interest doctrine is not limited to parties to litigation," it is cabined to "interested third parties who have a community of interests with respect to the subject matter of the communications and is applicable whenever parties with common interests join forces for the purposes of obtaining more effective legal assistance." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, Case No. 16-cv-00236-WHO (DMR), 2019 WL 1589974, at *6 (N.D. Cal. Apr. 11, 2019) (citation, internal quotation marks, and brackets omitted). Thus, sharing attorney communications for the purpose of furthering a business transaction cannot trigger the common interest doctrine. *See, e.g.*, *Santella v. Grizzly Indus., Inc.*, No. 3:12–mc–00131–SI., 2012 WL 5399918, at *2 (D. Or. Nov. 5, 2012) (refusing to extend the common interest doctrine to communications regarding a patent between potential investors and a company). As Federal District Judge Michael Simon has summarized, in cases where the common interest doctrine has applied, "every party asserting the common interest doctrine had entered into a one-on-one relationship with the recipient of the specific legal advice and that relationship was manifested in some reciprocal agreement." *Id.* (citing cases).

      Plaintiff and Striker share a unique one-on-one relationship such that this Court cannot categorically reject the application of the common interest doctrine. Plaintiff and Striker signed a non-disclosure agreement in 2013. ECF 161-6, Ex. 6. Striker is Plaintiff's primary funder, controls the "voting stock of the company," and its personnel have served on the Valmarc board as chairman of the board, interim CEO, and effectively interim CFO. ECF 161-2, Ex. 2 at 24:9–17, 24:24, 28:19–20, 29:3–15, 45:20–22. Thus, it is in the realm of possibility that Striker and Valmarc's counsel have had communications about legal strategy, and seeking legal advice, that

PAGE 8 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

fall under the common interest doctrine. Accordingly, on the issue of the common interest doctrine, this Court must DENY Defendants' Motion as currently framed.

However, to the extent that Plaintiff argues that all communications between Plaintiff and Striker are protected by the common interest doctrine, this contention is also erroneously categorical. There conceivably are relevant documents between Plaintiff and Striker that do not fall under the common interest doctrine because they exclusively concern business interests, not legal interests. *Cf. In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) (explaining that the attorney-client privilege must be construed narrowly).

### 2. Sean Hainer and the Functional Employee Doctrine

Defendants next argue that they are entitled to "documents and communications"—even those that contain privileged information—sent between Plaintiff and Sean Hainer, a Striker employee, because the inclusion of Hainer waived the privilege. MTC, ECF 148 at 8. But this Court is persuaded by Plaintiff's contention that Hainer was its functional employee and that privilege was not waived in any communications with him.

The functional employee doctrine recognizes that attorneys can "confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *United States v. Graf*, 610 F.3d 1148, 1158–59 (9th Cir. 2010) (holding that an outside consultant who communicated with insurance brokers, managed employees, and talked to attorneys on behalf of a corporation was a functional employee); *see also Regence Grp. v. Tig Specialty Ins. Co.*, Case No. 3:07-cv-1337-HA , 2011 U.S. Dist. LEXIS 171932, at *7 (D. Or. Aug. 26, 2011) (denying motion to compel testimony of discussion between defendant's employee and the lead underwriter of a policy defendant issued because the underwriter was "at least a functional employee").

PAGE 9 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

Hainer has been heavily involved with Plaintiff. He effectively acted as Plaintiff's interim CFO. ECF 161-2, Ex. 2 at 24:24–25:5. He prepared financial statements; was involved in budgeting, cash forecasts, and insurance matters; and participated in board meetings. ECF 161-3, Ex. 3. at 15:15–17:10, 47:17–23. And he was Valmarc's 30(b)(6) designee for discussing the company's financial performance. *Id.* at 9:11–14. Thus, the attorney-client privilege presumptively extends to any communications Hainer had with Plaintiff's attorneys.

### 3. Derek Spence and the Email Waiver of Privilege

Defendants finally argue that they are entitled to emails that Derek Spence, Striker's Managing Principal, sent and received through his Striker email address—even those containing privileged information. MTC, ECF 148 at 9. They concede that Mr. Spence sometimes acted as an employee of Plaintiff's, but argue that he did not do so when working through his Striker email. *Id.* Plaintiff counters that such a neat demarcation cannot be drawn between Spence's official capacities as a Striker and Valmarc employee because he sometimes engaged in Valmarc work through this Striker email address. Resp., ECF 160 at 10–11 (citing examples).

The argument over email accounts must be rejected for the same reasons that this Court rejects Defendants' categorical common interest arguments. As Defendants' cited cases explain, an individual presumptively waives the attorney client privilege in documents she saves on a work email address because she lacks a "reasonable expectation of privacy" in her work email, to which her employer has unfettered access. *See Am. Career Coll., Inc. v. Medina*, Case No. 2:21-cv-00698-PSG (SK), 2022 WL 18142503, at *1 (C.D. Cal. Dec. 9, 2022); *Alamar Ranch, LLC v. County of Boise,* No. CV-09-004-S-BLW, 2009 WL 3669741, at *3–4 (D. Idaho Nov. 2, 2009). But where the employer and the employee (who holds the privilege) have a common legal interest, this rationale would not apply. Therefore, at bottom, arguments over email accounts

PAGE 10 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

ultimately end up being arguments over the common interest doctrine, and because Defendants' common interest arguments are overbroad, this Court must also reject Defendants' categorical email waiver arguments.

### 4. Nonprivileged Communications

Finally, with regard to any Valmarc-Striker communications that do not fall under the attorney-client privilege at all, this Court will DENY the Motion at this stage. On the instant motion, it is unclear what specific documents, or categories of documents, Defendants are seeking. *See Hendon v. Reed*, No. 1:05–cv–00790–OWW–SKO PC, 2010 WL 1791230, at *1 (E.D. Cal. May 4, 2010) (a party "may not simply file a vague motion to compel that fails to identify which documents [it] is asking the Court to compel [the other party] to produce"). But this Court will provide Defendants an opportunity to narrow and specify their discovery requests.

\* \* \*

Consistent with the conclusions above, this Court provides Defendants with leave to renew their request for communications between Plaintiff and Striker, but this request must be narrowly tailored to specific categories of documents and the Parties must confer before any motions are filed. Additionally, if Plaintiff asserts the common interest doctrine or any other privilege in opposing Defendants' tailored requests, it must produce a responsive privilege log, if it has not already.

## CONCLUSION

For the foregoing reasons, this Court DENIES the Motion to Compel, ECF 148, with regard to Exhibits F, J, K, and L, RESERVES ruling with regard to Exhibits H and M pending in camera review, and DENIES the Motion with regard to communications between Valmarc and Striker, with leave for Defendants to renew their request after narrowing their request to specific

PAGE 11 – OPINION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO COMPEL

categories of documents and conferring with Plaintiff. Plaintiff is ORDERED to provide unredacted versions of the documents contained in Exhibits H and M for in camera review no later than January 19, 2024.

**IT IS SO ORDERED.**

DATED this 16th day of January, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
