# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VALMARC CORPORATION,** d/b/a Vi3, a Massachusetts corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>**NIKE, INC.,** an Oregon corporation, and **CONVERSE, INC.,** a Delaware corporation,<br><br>        Defendants. | Case No. 3:21-cv-01556-IM<br><br>**OPINION AND ORDER ON SPOLIATION AND SANCTIONS** |

Laura R. Salerno Owens and Adam M. Starr, Markowitz Herbold PC, 1455 SW Broadway, Suite 1900, Portland, OR 97201. Nevin M. Gewertz, Joshua P. Ackerman, Matthew W. Brewer, and Anastasiya Maione, Bartlit Beck LLP, 54 W. Hubbard Street, Suite 300, Chicago, IL 60654. Jon B. Hyland and Bennett Rawicki, Hilgers Graben, PLLC, 7859 Walnut Hill Lane, Suite 335, Dallas, TX 75230. William M. Burgess, Hilgers Graben, PLLC, 1201 Peachtree Street NE, Building 4, Suite 100, Atlanta, GA 30361. Attorneys for Plaintiff.

B. John Casey and Elliott J. Williams, Stoel Rives LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Richard T. Mulloy, Stanley J. Panikowski, and Edward H. Sikorski, DLA Piper LLP (US), 4365 Executive Drive, Suite 1100, San Diego, CA 92121. Ilana H. Eisenstein and Aaron Shaddy, DLA Piper LLP (US), 1650 Market Street, Suite 5000, Philadelphia, PA 19103. Ferlillia V. Roberson, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606. Ben C. Fabens-Lassen, DLA Piper LLP (US), 2000 Avenue of the Stars, Suite 400, Los Angeles, CA 90067. Harry P. Rudo, DLA Piper LLP (US), 650 S. Exeter Street, Suite 1100, Baltimore, MD 21202.

**IMMERGUT, District Judge.**

This matter comes before this Court on a Motion for a Determination that Plaintiff has Spoliated Evidence and for Sanctions ("Mot.") filed by Defendants Nike, Inc. ("Nike") and Converse, Inc. (together, "Defendants"). ECF 199. This Court offered the parties an opportunity to conduct an evidentiary hearing with respect to this motion, but all parties declined. ECF 257. This case involves a dispute over Defendants' alleged misappropriation of anti-counterfeiting technology developed by Plaintiff Valmarc Corporation, doing business as Vi3. First Amended Complaint ("Am. Compl."), ECF 95, ¶ 24. Vi3, a data-intelligence company that provides technology to help brands combat counterfeiting, brings claims against both Defendants for trade secret misappropriation under Section 2 of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and the Oregon Trade Secrets Act, O.R.S. 646.461 et seq., *id.* ¶¶ 185–242, as well as a breach of contract claim against Converse, a Nike subsidiary, *id.* ¶¶ 243–259.

Defendants allege that Vi3 intentionally deleted seven employees' email accounts that contained relevant evidence shortly before filing this action. Mot., ECF 199 at 1. Defendants seek a determination that Vi3 spoliated evidence and sanctions under Federal Rule of Civil Procedure 37(e). *Id.* Vi3 opposes the motion, arguing that (1) it had no duty to preserve most of the deleted accounts, (2) the deletion was not intended to deprive Defendants of evidence, and (3) Defendants have not been prejudiced. Vi3's Opposition to Defendants' Motion ("Opp'n"), ECF 217 at 10, 27, 35.

For the reasons stated below, this Court determines that Defendants have only demonstrated spoliation as to the deletion of Paul Foley's email account. Specifically, this Court finds that Vi3 breached its duty to preserve Foley's emails, the deletion of his emails prejudiced Defendants, and Vi3's deletion of Foley's emails was intentional. Pursuant to Rule 37(e)(2)(B),

this Court will instruct the jury that it may presume the information contained in Foley's email account was unfavorable to Vi3.

## BACKGROUND

### A. Vi3 Learns of Nike's Alleged Misappropriation and Calls for Securing Documents

Vi3 alleges that it first learned that Nike had copied its anti-counterfeiting system in November 2018[1] when Paul Foley left Nike and began working for Vi3 as its Executive Vice President of Global Sales and Strategy. Am. Compl., ECF 95 ¶¶ 163–66; Deposition of Paul Foley ("Foley Dep."), ECF 200-18, Ex. 18 at 11–12, 47.

Vi3 alleges in its amended complaint that "[i]n early 2019, videos began to surface on YouTube showing QR codes on Nike products." Am. Compl., ECF 95 ¶ 169. On February 27, 2019, John O'Brien, Vi3's Director of Business Development, circulated links of those videos to other Vi3 executives. ECF 200-19, Ex. 19. The next day, he sent an email to two Vi3 executives with the subject line "SECURE DOCUMENTS," calling for Vi3 to secure as much documentation as possible, including any "smoking gun" evidence on Nike's communication with Vi3 on its intellectual property. ECF 200-20, Ex. 20 at 2. Vi3 maintains that "before the summer of 2019, [it] had not seen evidence of Nike products that potentially infringed [its] patents," Declaration of Derek Spence, ECF 218-34, ¶ 3, and that it did nothing in response to O'Brien's email. Opp'n, ECF 217 at 29.

---

[1] On summary judgment, this Court denied Defendants' argument that Vi3's trade secrets claim was time-barred as a matter of law. *See* Opinion on Summary Judgment, ECF 273 at 11, 20. The precise date on which Vi3's trade secret claim accrued for purposes of statute of limitations is an issue for the jury to decide at trial, and nothing in this opinion should be construed as deciding that matter. *Id.*

**B. Vi3's Email Account Practices**

In March 2019, Vi3 began transitioning from an internally hosted Microsoft Exchange email server to a Microsoft 365 cloud-based system. Deposition of William Moorman ("Moorman Dep."), ECF 200-2, Ex. 2 at 25; Deposition of Erich Johanson ("Johanson Dep."), ECF 200-3, Ex. 3 at 4. From this time onward, Vi3 employees' email accounts used the domain name "vi3global.com." Deposition of Ernie Henrichon ("Henrichon Dep."), ECF 200-4, Ex. 4 at 29. Each employee account hosted on the Microsoft 365 platform cost Vi3 annual licensing costs between $48 and $150. Moorman Dep., ECF 200-2, Ex. 2 at 63–65.

Dr. Ernie Henrichon was the administrator in charge of transitioning and managing Vi3's email accounts. Henrichon Dep., ECF 200-4, Ex. 4 at 7. As part of managing the accounts, Henrichon would delete the email accounts of employees who left Vi3. *Id.* at 18. He testified that the practice worked as follows:

> When a person left the company, when I was told they were leaving the company, I would stop them from having access into the email. I would change the password for them, and I would forward any new e-mails coming into that email to typically their supervisor, but whoever—whoever was designated to receive those emails. . . . When . . . the person receiving those emails no longer felt it was necessary to have them, I would delete those people from the system[.]

*Id*. Once deactivated, Microsoft kept the emails in a "soft deleted" state for 30 days. Deposition of Brandon Leatha ("Leatha Dep.") ECF 218-19, Ex. 19 at 5. Emails were recoverable during this time. *Id.* After 30 days, the accounts were permanently deleted. *Id.* at 6. Henrichon testified that the practice of routinely deleting employee email accounts after they left the company was a cost-cutting measure that began when Doug Olsen became the CEO of Vi3 in October 2020. Henrichon Dep., ECF 200-4, Ex. 4 at 18–19; ECF 200-22, Ex. 22 at 4. Henrichon kept handwritten notes of his email account management. *See* ECF 200-24, Ex. 24.

## C. Vi3 Terminates Employees and Deletes Accounts

Vi3 is "a small company" with "a tight-knight group of people." Deposition of Eric Johanson, ECF 214-79 at 18. In 2020, Vi3 began terminating employees to cut costs. Opp'n, ECF 217 at 7; *see* ECF 200-22, Ex. 2 (Vi3 log of employee hiring and termination dates). In spring 2020, Vi3 terminated John O'Brien, Vi3's Director of Business Development, ECF 200-25, Ex. 25 at 5, Daniel Tillinghast, a database engineer, *id.* at 3, and Jeff Martin, Vi3's Vice President of Sales for License Channels, ECF 200-28, Ex. 28 at 4; ECF 200-22, Ex. 22 at 3. In September 2020, it terminated Jamal Rasheed, a software engineer, ECF 200-25, Ex. 25 at 1, and in December 2020, it terminated Karen Talarico, Vi3's Senior Data Analyst, *id.* at 13, and Paul Foley, Executive Vice President of Global Sales and Strategy. ECF 200-22, Ex. 22 at 3.

Henrichon's notes state that he forwarded these employees' new incoming emails to their supervisors after they departed.[2] ECF 200-24, Ex. 24 at 33. In January 2021, Henrichon deleted Rasheed and Talarico's accounts. *Id.* at 76. Henrichon also deleted the accounts of Martin, O'Brien, and Tillinghast at some point after October 2020. *Id.* at 34; *see also* ECF 200-43, Ex. 43 at 3 (Vi3 counsel stating that it no longer possesses vi3global.com email accounts for O'Brien, Rasheed, Tillinghast, or Talarico).

It is unclear exactly when Foley's account was initially deleted and by whom. The day Foley left Vi3, December 7, 2020, Henrichon forwarded Foley's account to Foley's supervisor, but Henrichon did not delete the mailbox at that time. ECF 200-24, Ex. 24 at 69. Then, sometime between "approximately July 13, 2021, and August 25, 2021," Foley's account was deleted. ECF 200-11, Ex. 11 at 4. Henrichon discovered Foley's email account was missing on September 25,

---

[2] Throughout 2020 and 2021, more Vi3 employees' email accounts were forwarded to their supervisors and ultimately deleted. This Opinion addresses only those email accounts the parties focus on in their briefing.

2021. *Id.* He tried to restore the email data that day, but was unable to do so. *Id.* Henrichon

contacted Microsoft to recover Foley's account, but was still unable to do so. *Id.* Henrichon

deleted Foley's account on September 30, 2021, when he "realized there was no way to recover

any data." Henrichon Dep., ECF 200-4, Ex. 4 at 68–71. Henrichon, and each of the Vi3

executives who had administrator access to Foley's email account, except then-CEO Doug

Olsen, have testified that they did not delete Foley's account. Henrichon Dep., ECF 200-4, Ex. 4

at 4, 63–64; Declaration of Eric Johanson, ECF 218-26, Ex. 26 ¶ 4; Declaration of Diane

Sarantopoulos, ECF 218-27, Ex. 27 ¶ 4; Declaration of Marc Colangelo, ECF 218-16, Ex. 16 ¶ 4.

Olsen has been unable to testify in this case ██████████████████. Declaration of

Joshua Ackerman ("Ackerman Decl."), ECF 218 ¶ 5.

 In spring 2021, Henrichon successfully restored several other employees' accounts.

Henrichon Dep., ECF 200-4, Ex. 4 at 72, 83.

**D.  Vi3 Prepares for this Lawsuit**

 Vi3 began communicating with lawyers at Bartlit Beck on February 12, 2021. ECF 200-

31, Ex. 31 at 7 (Ref. No. 3050). Vi3's privilege log describes an email "requesting and reflecting

legal advice regarding fact development in anticipation of litigation." *Id.* A file named "Claim 1

Nike Tongue Label" was attached to the email. *Id.* Communications between Vi3 and outside

counsel continued until October 2021, when Vi3 filed the complaint against Nike in this case.

*See id.* at 2–18. Vi3's privilege log describes each email communication as "reflecting legal

advice regarding fact development in anticipation of litigation." *Id.*

 Vi3 and its counsel conducted a "pre-suit investigation" beginning in April 2021. ECF

200-11, Ex. 11 at 6–7; Ackerman Decl., ECF 218 ¶ 3. The investigation involved running search

terms on employee's emails, including their vi3global.com email accounts, and collecting emails

that contained those search terms. ECF 200-11, Ex. 11 at 6–7.

PAGE 6 – OPINION AND ORDER ON SPOLIATION AND SANCTIONS

Vi3 and its counsel also began instructing some Vi3 employees to preserve documents through litigation "hold notices." Bartlit Beck, Vi3's outside counsel for its then-potential trade secret misappropriation claim against Nike, sent the first document preservation notices to four Vi3 executives on June 2, 2021. Ackerman Decl., ECF 218 ¶ 6; ECF 218-4, Ex. 4 at 5. It sent litigation hold notices to two more Vi3 executives on September 29, 2021. *Id.* Vi3 formally retained Bartlit Beck in connection with this lawsuit in October 2021 and filed suit against Nike on October 26, 2021. Ackerman Decl., ECF 218 ¶ 11. Henrichon did not receive a litigation hold notice until November 11, 2021, weeks after Vi3 filed suit. ECF 218-4, Ex. 4 at 5.

Vi3 maintains that it instructed Henrichon to preserve documents much earlier. Vi3's counsel Joshua Ackerman states that on April 13, 2021, Olsen instructed Henrichon to preserve potentially discoverable material. ECF 218-4, Ex. 4 at 4. Ackerman also maintains that during a June 4, 2021, phone call, Bartlit Beck instructed Henrichon to retain all information that could be potentially relevant to any litigation against Nike. Ackerman Decl., ECF 218 ¶ 8. On October 26, 2021, the day Vi3 filed suit against Nike, Vi3 held a company-wide call where Olsen instructed employees, including Henrichon, to preserve all documents. *Id.* ¶ 12. Henrichon testified that no one told him, orally or in writing, to preserve emails before Vi3 filed suit on October 26, 2021, and that if they had, he would have preserved those emails. Henrichon Dep., ECF 200-4, Ex. 4 at 47–50.

## STANDARDS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Est. of Bosco ex rel. Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 923–23 (N.D. Cal. 2022) (quoting *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051–52

(S.D. Cal. 2015)). Federal Rule of Civil Procedure 37(e) exclusively governs the remedies available for spoliation of electronically stored information ("ESI").[3]

Sanctions for the loss of ESI may be appropriate when (1) there was a duty to preserve that ESI, (2) that ESI is "lost" and "cannot be restored or replaced through additional discovery," (3) the loss is because "a party failed to take reasonable steps to preserve" the ESI, and (4) a party was prejudiced by the loss. Fed. R. Civ. Proc. 37(e)(1). The moving party bears the burden of proving the first three elements by a preponderance of the evidence. *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017).

Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other," Fed. R. Civ. P. 37(e) Advisory Committee Note (2015), but the moving party should provide some "specifics to support" a finding of prejudice. *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, No. 19-cv-05561, 2021 WL 5919821, at *10 (N.D. Cal. Dec. 15, 2021). A finding of prejudice is within the court's discretion and depends "in part on the importance of the information to the case." *Id.* If prejudice is established, the court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Appropriate measures to cure prejudice may include instructing the jury about the facts and circumstances surrounding the deletion of evidence. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2018 WL 5786206, at *2–3 (D. Or. Nov. 5, 2018); *Yela Fiduciary Servs., LLC ex rel. Est. of Sund v. Benton Cnty.*, No. 6:20-cv-01925-MK, 2022 WL 17666400, at *9 (D. Or. Dec. 14, 2022).

---

[3] Rule 37(e) displaces a court's inherent ability to award sanctions with respect to loss of ESI. *See Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018).

A court may impose more severe sanctions if it additionally finds that a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Sanctions under this provision include presuming the lost information was unfavorable to that party, instructing the jury that it may or must presume the information was unfavorable to that party, or dismissing the case or entering default judgment. Fed. R. Civ. P. 37(e)(2).

## DISCUSSION

As a preliminary matter, a party seeking sanctions under Rule 37(e)(1) must show that ESI was lost and cannot be restored or replaced. That party must then show "(1) there was a duty to preserve the information; (2) the party who lost the information failed to take reasonable steps to preserve it; and (3) loss of the information prejudiced another party." *Fourth Dimension Software*, 2021 WL 5919821, at *8. If this showing is made, the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the moving party also shows that the party who failed to preserve the ESI "acted with the intent to deprive another party of the information's use in litigation," more severe sanctions are available. *Id.* 37(e)(2).

Here, the parties do not appear to contest that, if subject to a duty to preserve information, Vi3 did not take reasonable steps to preserve evidence. But Vi3 argues that it was not subject to such a duty, that any loss of ESI did not prejudice Defendants, and that Vi3 did not intend to deprive Defendants of the information's use in this litigation. For the reasons discussed below, this Court concludes that Vi3's duty to preserve evidence attached at the latest in April 2021, Vi3 violated that duty by deleting Foley's email account, the deletion of Foley's emails prejudiced Defendants, and Vi3 acted with an intent to deprive Defendants of the use of Foley's email account in this litigation.

## A. Lost Information

Before addressing whether the standard for sanctions is met, this Court will first define the extent of "lost" information, as required to apply sanctions under Rule 37(e). Information is "lost" if it cannot be "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

The lost information[4] at issue in this motion includes:

- The Office 365 mailbox of Paul Foley, former Executive Vice President for Global Sales and Strategy at Vi3 and previously Director of Brand Protection and Intelligence at Nike

- The Office 365 mailbox of John O'Brien, former Director of Business Development at Vi3

- The Office 365 mailbox of Jeffrey Martin, former Vice President of Sales for License Channels at Vi3

- The Office 365 mailbox of Jamal Rasheed, Principal Software Engineer at Vi3

- The Office 365 mailbox of Daniel Tillinghast, Database Engineer at Vi3

- The Office 365 mailbox of Karen Talarico, Senior Data Analyst at Vi3

A large quantity of emails sent to or from these accounts has been produced from other sources, including other Vi3 email accounts. This motion concerns only those emails that cannot be recovered from other sources.

## B. Duty to Preserve the Evidence

Vi3's duty to preserve the emails arose at the latest in April 2021. A party's duty to preserve evidence attaches when "a potential claim is identified or future litigation becomes

---

[4] The parties do not appear to dispute that the emails are "lost" such that they "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

probable." *Dabney v. Wyoming Vapor Co., LLC*, No. 3:19-CV-00230-YY, 2020 WL 5731819, at

*5 (D. Or. July 10, 2020), *report and recommendation adopted as modified sub nom.*, *Dabney v.*

*Wyoming Vapor Co.*, 2020 WL 4784734 (D. Or. Aug. 18, 2020) (citation omitted). "Litigation

need not be imminent to be probable, but it must be more than a mere possibility." *Id.* "This is an

objective standard, asking not whether the party in fact reasonably foresaw litigation, but

whether a reasonable party in the same factual circumstances would have reasonably foreseen

litigation." *Id.* (citation omitted). The duty requires a party "to preserve evidence which it knows

or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F.

Supp. 2d 1060, 1067 (N.D. Cal. 2006).

There is no question that Vi3 knew or should have known about its potential claims and

the evidence relevant to those claims by April 2021, when Vi3, along with outside counsel,

began its pre-suit investigation, which included selecting evidence to use in this litigation. The

pre-suit investigation involved running search terms in Vi3's email database, preserving emails,

and issuing litigation hold notices to select employees. This shows that Vi3 knew of its potential

claims against Nike—it was actively assessing a potential claim and preparing for litigation by

reviewing and collecting evidence. Litigation was reasonably foreseeable at this point.

Though it is conceivable that Vi3's duty to preserve evidence attached earlier, the facts

are not sufficiently clear as to the events in February 2019 or February 2021. In February 2019,

O'Brien emailed two other Vi3 executives with a call to secure "as much documentation as we

can find surrounding some key events" since "Nike confirm[ed] that they copied the Valmarc

system." *See* ECF 200-20, Ex. 20 at 2. At least some of the evidence underlying that event

appear to this Court to be in dispute,[5] and both parties declined this Court's offer to hold an evidentiary hearing. As for February 2021, Vi3's privilege log identifies communication with outside counsel about "fact development in anticipation of litigation." ECF 200-31, Ex. 31 at 7. Because such communications are privileged, this Court cannot determine specifically what those communications involved, but it is highly likely that they involved a potential claim against Nike and Converse. Accordingly, although the obligation to preserve evidence likely attached by February 2021, there is no doubt that Plaintiff was required to preserve emails by April 2021.

When Vi3 began its pre-suit investigation in April 2021, it was "obligated to suspend" its email deletion policy and "implement a litigation hold to ensure the preservation of documents." *Apple Inc. v. Samsung Elecs. Co*., 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). And, at that point, Vi3's executives were required to communicate its preservation obligations "to employees in possession of discoverable materials." *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13-cv-1964, 2015 WL 4077732, at *3 (S.D. Cal. July 6, 2015).

The evidence is not clear as to when most of the accounts at issue were deleted. Vi3 suggests that it is "safe to assume" that accounts for Martin, O'Brien, and Tillinghast were deleted when they left Vi3 in early 2020. Opp'n, ECF 217 at 8–9. At least some evidence in the record suggests, however, that Vi3 did not routinely delete employee email accounts until Doug Olsen became CEO in October 2020. *See* Henrichon Dep., ECF 200-4, Ex. 4 at 18, 73–74. Henrichon deleted accounts belonging to Jamal Rasheed and Karen Talarico in January 2021,

---

[5] Vi3 asserts that "[c]ontrary to Defendants' claim that Vi3 began to secure documents in preparation for this litigation after Mr. O'Brien sent his email," it "did nothing" in response to the email, and "did not contact counsel or otherwise investigate any trade secret claim" at that time. Opp'n, ECF 217 at 29.

ECF 200-25, Ex. 25 at 69, although accounts belonging to Rasheed, Talarico, O'Brien and Martin in AppRiver, an email virus-scanning tool, were not deleted until June 1, 2021. ECF 200-25, Ex. 25 at 71. Defendants point to that date as the date when this Court should assume that O'Brien and Martin's accounts were deleted, but Henrichon's notes list the email accounts he also deleted on that day, which includes several other Vi3 employees but not O'Brien or Martin.

Because Defendants have only clearly shown that Foley's account was deleted after Vi3's duty to preserve attached,[6] based on either a February 2021 or an April 2021 obligation to preserve documents, Defendants have only demonstrated that Vi3 breached its duty as to Foley's account. Accordingly, this Court analyzes prejudice and intent only as to Foley's account.

## C. Prejudice to Defendants

"The prejudice inquiry looks to whether the spoiling party's actions impaired the nonspoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (internal quotations and brackets omitted). Courts have found spoliation prejudicial where the destruction of evidence "'forced [the affected party] to rely on incomplete and spotty evidence' at trial." *See id* (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs*, 69 F.3d 337, 354 (9th Cir. 1995)); *see, e.g.*, *Dish Network LLC v. Jadoo TV, Inc.*, No. 20-cv-01891, 2022 WL 11270394, at * (N.D. Cal. Oct. 19, 2022) (finding failure to preserve emails prejudiced the plaintiff). "To show prejudice resulting from the spoliation," courts require a party to "come forward with plausible, concrete

---

[6] Although the June 2021 deletion of the AppRiver accounts is one piece of evidence suggesting O'Brien and Martin's email accounts may not have been deleted until after April 2021, this Court assigns little weight to that evidence in light of the earlier deletion of email accounts associated with other employees whose AppRiver accounts were deleted in June, as well as the lack of any notation that O'Brien or Martin's accounts were deleted with the other email accounts deleted in June 2021. Defendants have accordingly not met their burden of showing that Vi3 breached its duty to preserve those email accounts.

suggestions as to what [the destroyed] evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) (citations and internal quotation marks omitted).

This Court finds that Vi3's deletion of Foley's email account prejudices Defendants. Foley's email account is highly relevant to this litigation and its destruction directly impairs Defendants' "ability to go to trial." *Leon*, 464 F.3d at 959. One of Defendants' defenses is that Vi3 potentially disclosed its trade secrets without reasonable protective measures. Defendants' theory is that Vi3 salespeople may have disclosed some of Vi3's trade secrets while marketing Vi3's system to potential customers. *See* Mot., ECF 199 at 27–28. Foley testified that he shared Vi3's system with potential customers as a part of his role as the Executive Vice President of Global Sales and Strategy, and that he was not given any instructions on keeping Vi3's system confidential while doing so. *See* Foley Dep., ECF 200-18, Ex. 18 at 19–20. The lack of evidence proving this hinders Defendants' ability to present their defense at trial because it has forced Defendants to "to rely on incomplete and spotty evidence" of Vi3's communications with third parties during the relevant period, including the measures it took to safeguard its trade secrets. *Leon*, 464 F.3d at 959.

Foley is also the central figure of Vi3's complaint and allegedly revealed Nike's alleged misappropriation of Vi3's trade secrets to other Vi3 executives. *See* Am. Compl., ECF 95, ¶¶ 163–167. Foley has denied making such statements, *see* ECF 200-18, Ex. 18 at 13, and the deletion of potentially corroborating or contradicting evidence prejudices Defendants' ability to disprove that assertion.

Vi3 argues that the spoliation has not prejudiced Defendants because "Vi3 has produced a wealth of information from many custodians in this case . . . includ[ing] over 8,000 emails." Opp'n, ECF 217 at 35. But the "production of some evidence does not excuse destruction of

other relevant evidence." *Jones*, 95 F.4th at 736. Vi3 also argues that Defendants cannot claim they were prejudiced by the deletion of email accounts since they simultaneously argue there is already enough evidence entitling them to summary judgment on Vi3's lack of reasonable measures to protect its trade secret information. Opp'n, ECF 217 at 38. Defendants' argument that it is entitled to summary judgment does not preclude it from arguing that its defense is nonetheless impaired by the inability to review evidence in the email account of Foley, a key actor in this case. Defendants are "left to litigate this case without a critical piece of evidence." *Dabney*, 2020 WL 5731819 at *7 (quoting *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1056 (S.D. Cal. 2015)).

In sum, Defendants have established that Vi3's deletion of Foley's email account prejudiced them by limiting the evidence Defendants could present to prove their theory that Vi3 did not take reasonable measures to protect its trade secrets, thereby "impair[ing] their ability to go to trial." *Leon*, 464 F.3d at 939.

## D. Intent to Deprive

"Rule 37(e) does not define 'intent,' but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735; *see also Yela Fiduciary Servs.*, 2022 WL 17666400, at *8 (intent is satisfied "when the evidence shows[,] or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations"). Negligent or even grossly negligent behavior is insufficient to show intent; instead, the standard is something akin to bad faith. *See* Fed. R. Civ. P. 37 Advisory Committee Note (2015) (stating that negligence or even gross negligence is insufficient).

Courts typically must consider circumstantial evidence in determining whether destruction was intended to deprive another party of the information's use in litigation.[7] *Jones*, 95 F.4th at 735; *see, e.g.*, *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (finding conduct was intentional because, absent "any other credible explanation for altering the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"). Relevant considerations include: (1) the context of the deletion, including the deleting party's financial situation; (2) the "timing of the evidence's loss," which is "[t]he most decisive factor" in the assessment; (3) whether there was "selective preservation" of any data; (4) whether the deleting party attempted to recover the data; (5) "the method of deletion (e.g. automatic deletion vs. affirmative steps of erasure)," and (6) "the existence of institutional policies on preservation." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 977–78 (N.D. Cal. 2022) (listing the first four considerations); *Laub v. Horbaczewski*, No. CV 17-6210, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020) (mentioning the fifth and sixth consideration); *see also Jones*, 95 F.4th at 735 (listing a similar set of considerations).

Applying the considerations from *hiQ Labs* and *Laub*, this Court finds that Vi3's deletion of Foley's account was conducted with the requisite intent. The first consideration, the context of the deletion, weighs in Vi3's favor; Vi3's account administrator testified that Vi3 was "looking to save at all costs" by deactivating accounts of former employees, Henrichon Dep., ECF 200-4, Ex. 4 at 74–75, which counsels against finding the requisite intent. But the second consideration supports a finding of intent. Vi3 did not delete Foley's account until July or August 2021, just

---

[7] Vi3's argument that Defendants have no direct evidence of Vi3's intent is unavailing because direct evidence is not required. *Jones*, 95 F.4th at 735.

two to three months before filing this lawsuit and during Vi3's pre-suit investigation, suggesting a "rush to delete relevant evidence." *hiQ Labs*, 639 F. Supp. 3d at 978. Third, Vi3 preserved other employee emails pursuant to hold notices from outside counsel, supporting an inference that Vi3 selectively deleted the missing accounts. The permanent deletion of Foley's account weeks before Vi3 filed suit, is especially suspect. *Burris v. JPMorgan Chase & Co*., No. 21-16852, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024). Fourth, Henrichon attempted to recover the deleted emails in September 2021, *see* ECF 200-24, Ex. 24 at 72, which weighs in Vi3's favor. On the fifth and sixth considerations, any deletion was affirmative rather than automatic, because Vi3's email accounts did not automatically expire. Vi3 maintains, however, that it had a standing policy of deleting accounts after employees left the company. These considerations are therefore neutral.

Taken together, the specific facts of this event suggest that Vi3 affirmatively deleted Foley's account with the intent to deprive Defendants of the information in litigation. Although a close question given Vi3's other reasons for deleting accounts and its efforts to recover the lost accounts, the timing of the deletion of Foley's account weighs strongly in favor of finding intent. *See hiQ labs*, 639 F. Supp. 3d at 978 (noting timing is the "most decisive factor" in this analysis). Sanctions under Rule 37(e)(2) are therefore merited.

**E.  Appropriate Sanction**

Finding the deletion of Foley's account prejudiced Defendants and Vi3 acted with intent to deprive Defendants of his emails, this Court finds that Rule 37(e) sanctions against Vi3 are appropriate. Rule 37(e) provides three forms of sanctions: (1) "presume that the lost information was unfavorable to the party," (2) "instruct the jury that it may or must presume the information was unfavorable to the party," or (3) "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

Defendants have not shown that the loss of the information prevents them from proving their defense; indeed, Defendants presented ample other evidence on summary judgment recounting Vi3's communications with other companies. Accordingly, dismissal and default judgment are inappropriate. *Cf. Dabney*, 2020 WL 5731819 at *8. On the other hand, the record supports an inference that Vi3 knew, at the time it deleted Foley's email account, that it planned to file suit and that the emails were relevant to its claims. These facts suggest the emails were unfavorable to Vi3.

Given that Defendants have access to other evidence, including testimony from Mr. Foley, this Court concludes that a permissive adverse inference instruction providing a rebuttable inference that the lost information is unfavorable to Vi3, is a more appropriate sanction than a mandatory adverse inference instruction. While Vi3's conduct warrants some form of adverse jury instruction, it likely does not warrant "the quite extraordinary relief . . . of mandatory adverse inference instructions." *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623, 2020 WL 7389417, at *3 (N.D. Cal. May 13, 2020). Accordingly, the Court will issue a permissive adverse inference instruction.

The Parties are ordered to confer on this issue to discuss the possible language of such an instruction. Defendants should include a proposed permissive adverse inference instruction along with their other pretrial filings due on December 19, 2024. *See* ECF 261. Because an adverse inference instruction is rebuttable, *Apple Inc.*, 881 F. Supp. at 1150, Vi3 may put on evidence at trial that rebuts the presumption that the material deleted is unfavorable to Vi3.

## CONCLUSION

For the reasons stated above, this Court determines that Vi3 willfully spoliated evidence of Foley's email account after its duty to preserve attached, and that the spoliation prejudiced Defendants. This Court finds that sanctions under Rule 37(e)(2) are appropriate. Accordingly,

PAGE 18 – OPINION AND ORDER ON SPOLIATION AND SANCTIONS

this Court will include a jury instruction describing the spoliation and informing the jury that it may presume that Foley's deleted emails were unfavorable to Vi3. The Court will finalize the wording of the adverse-inference instruction, with input from the parties, at the final pre-trial conference.

**IT IS SO ORDERED.**

DATED this 11th day of December, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge